If I had to pick just one argument, Ms. Garcia's strongest argument, I would say that there was simply insufficient information on the record to reliably calculate the base offense level for the underlying offense, and that is, of course, one of the two requirements under the guideline that have to be met before the cross-reference can be applied. And the underlying offense in this context would be a sale or sales of drugs that generate the laundered proceeds. I'd like to turn to those two elements of the guideline and, of course, the definition of the underlying offense that's in the guideline for the cross-reference, which is section 2S1.1A1, as discussed on page 48 of the brief. The first question is, what is the underlying offense in this context? This court has answered that, for example, in the C. Fuentes case, which is discussed on page 36 of appellant's brief. In that context, as well as in this case, the underlying offense would be the sale of a controlled substance that generates the laundered proceeds. This court clarified in C. Fuentes that the underlying offense is not the drug conspiracy itself. It's the actual sale, the exchange of drugs for money, so that that money can then be laundered. A Tenth Circuit case, Diaz-Meneda, in the dissent, it also talks about that in more detail. That's discussed in page 42 of appellant's brief. But it basically explains that a conspiracy is just a mental agreement or mental assent to commit a crime, and that that in itself does not generate any proceeds that can be laundered. The underlying offense that generates laundered proceeds is the actual sale of narcotics, and that's what we would be looking at to see if this cross-reference can be applied. In the instant case, in Ms. Garcia's case, the only drug load that was actually identified was a seized load that a co-defendant, Mr. Apaseo, he tried to import it from Mexico through the port of entry at the border. He was caught. That load was seized. It did not generate any funds that could be laundered. And therefore, it shouldn't have been the basis for calculating the base offense level for the underlying offense because it wasn't the underlying offense. Again, the underlying offense was a sale or sale of drugs that generated the proceeds that Ms. Garcia laundered. And in this case, that sale or sale or sales were never identified. And so if those sales were never identified- There were so many sentencing events. They kept coming in, coming in, coming in. And when she was finally asked, she didn't say anything about that. Garcia, she just said she was sorry. She didn't say anything about that. She didn't say, oh, there was cocaine, oh, there was this or that. She did not address all the stuff you're now talking about. And that, quote, mistake about the cocaine, her lawyer and she did not say anything about at the final sentencing hearing. Yes, Your Honor. I believe the court's referring to once the district court determined that the cross-reference should apply and it started going into the calculations. The prosecutor mistakenly said that there wasn't cocaine involved in this case. So the district court didn't consider that even though it would have resulted in a lower guideline range. But her lawyer didn't say anything and she didn't say anything. And they had talked about cocaine before in the earlier hearings, but they didn't mention it there. So I don't see that in play here. And as I said, it seems like the judge was really considering so many facts, so much stuff in four hearings, at least four. So how does that leave us? Because we're not the ones making facts. We can certainly reverse based on facts, but that's tough for you. So tell me, what is it that the district court missed after having so many hearings? Well, I think the district court did the best it could with the available information that it had. But the information that it had was simply insufficient to calculate the base offense level for the drug sales that generated the laundered funds. When we're talking about the cocaine, the drug load that was seized certainly included cocaine, and the appellant failed to object to that. So that particular issue would be reviewed only for plain error. But the district court shouldn't have even gotten to that point of trying to calculate the base offense level for those different types of drugs because that was the wrong drug load to focus on. That drug load, the one that included the cocaine, among other drugs, was seized, and therefore didn't generate any funds. It wasn't the underlying offense for purposes of this guideline. What the district court should have instead done was see if it could calculate the base offense level for the underlying offense, meaning the actual drug sales that generated the laundered proceeds. And because those drug sales were not particularly identified, there was insufficient information to calculate the base offense level for those. For example, there was never any identification of when did those drug sales take place, what type of drug or drugs did they include, in what amounts, how much proceeds did they generate that were then laundered by Ms. Garcia, and then make that connection. And therefore the cross-reference shouldn't have been applied to begin with because the second requirement for the cross-reference to be even considered is that the offense level for that offense, meaning the drug sale, can be determined, and it couldn't be determined. The district court was essentially trying to calculate the base offense level based on the seized load, but the seized load didn't generate any proceeds, so it was focusing on the wrong offense, not on the- I understand what you said, and correct me if I get it wrong, but you're saying that the base offense level should be 8 instead of 38, is that right? Yes, Your Honor. I'm saying that without applying the cross-reference in 2S1.181, the district court should have instead defaulted to the next subsection, which is 8.2. That starts off at a base offense level of 8. It goes up by a couple of points if the laundered funds were more than $6,500, which I believe the district court estimated that they were around $10,000. But even with those extra two points, we still believe that Ms. Garcia would have ended up at a 0-6 month guideline range. So instead of the 57 months that she received with the cross-reference, so we're saying the court shouldn't have applied the cross-reference in A1. It should have sentenced her under A2, and that that would have resulted most likely in a guideline range of 0-6 months, even with the enhancements that the district court would have applied. Does the PSR reference A2 at all, or the point you're making about the calculation? I mean, normally the PSR is extraordinarily detailed, and Judge Hanks mentioned since there was so much going on, does the PSR, I don't remember, advert specifically to A2 that the district court didn't see, or is it just totally the PSR and the court not considering A2? That's a good question. The PSR determined that the cross-reference should apply, so it didn't really go through A2 because it was a set proceeding under A1, and it also determined that the cross-reference would have resulted in a higher base offense level, so it didn't really see the need to calculate what it would have been under A2. But what the pre-sentence report did, and I think the district court at some point agreed that it was incorrect, was that the PSR calculated the base offense level based on the seized load. So it basically took the basically combined drug amounts for the seized load, calculated the base offense level for that as it would for a drug conspiracy case. But I think eventually the district court recognized that that was not proper because the seized load did not generate any funds. And so then the district court at sentencing basically did essentially a different calculation than what was done in the PSR, where it was trying to sort of extrapolate from the amount of the seized funds to what the amount of the drugs would have been, rather than use the calculations that were in the PSR. But unfortunately there wasn't enough information to reliably do that because the assumptions it was making were still based off the seized load. There wasn't any information about what the actual drug sales consisted of as far as what type or amount of drugs that generated those funds. And there's also a, like I said, there's two requirements under the cross-reference A1. The other one that I'd like to point out, besides of course the definition of what the underlying offense is, is that subsection A, or capital A, requires that the defendant herself committed the underlying offense or would be accountable for it under subsection A1A of the relevant conduct guideline. And the reason that's important is because typically when a district court sentencing somebody in a drug conspiracy, relevant conduct can be very broad. A defendant can be responsible for actions that she didn't even know about of other co-defendants but that were reasonable foreseeable to her. But here it's only referencing A1A, which is acts or omissions caused by the defendant herself. And so I think the district court's approach basically was to apply relevant conduct as it would in a drug conspiracy case as if it was sentencing Ms. Garcia for a drug conspiracy, and it didn't limit it to the more limited definition or parameters that are here. In order to find that Ms. Garcia herself committed the underlying offense, meaning the underlying drug sales, we would first need to identify, well, which drug sale are we talking about? When did it occur? What type of drug was it? What amount? How much proceeds did it generate? And that she committed that and then laundered the proceeds. But again, that was never identified. The only drug load that was identified was a seized load, which I think the district court eventually agreed wasn't the underlying offense, but it nevertheless used that to try to calculate the offense level. And then, of course, there's the second requirement, which is connected by an and. So if either one isn't present, the cross-reference shouldn't apply. Our argument is that neither one of them applied, but even if the court were to find that one of them did, if the other one didn't apply, then the cross-reference shouldn't have applied. While you have time left, address what our standard of review is, which depends on whether the issues you're presenting were properly preserved in the district court. Yes, Your Honor. Well, as far as the application or interpretation of the guideline, of course that's de novo. And so that's why I think that Ms. Garcia's strongest argument is that the guideline was misapplied because the district court was essentially focusing, wasn't correctly defining the underlying offense as being the sale of the drugs, and was instead relying on the seized load. As far as any factual findings that come after that, they're generally for clear error, with the exception, as was pointed out, about the failure to object to the court not considering the cocaine. That would be for plain error since there was no objection specifically to that issue. But our argument is that because the district court misinterpreted or misapplied the guidelines, it shouldn't have applied the cross-reference in the first place. This court doesn't really need to reach all the details of each factual finding the district court made because the district court was essentially misapplying the guideline. There wasn't ‑‑ it was applying it to the wrong offense, and it was also applying the relevant conduct in the wrong way, as I explained earlier, which this court would review de novo in seeing how and whether the guideline should apply, the cross-reference specifically, should apply in the first place. Anything else? No, I'll reserve my remaining time for rebuttal. Thank you very much.  Good morning, Your Honors. May it please the Court, John Reed on behalf of the United States. Your Honors, the district court's judgment should be affirmed here because the court correctly applied the cross-reference in the money laundering guideline 2S1.1A1 to hold Ms. Garcia responsible for a quantity of drugs, and it did not reversibly err in determining that quantity and the resulting base offense level. With respect to applying the cross-reference, I agree with some of what opposing counsel said, and that is the underlying offense for the money laundering guideline here was, as this court said in Cifuentes, a sale and distribution of drugs. So in other words, the money that she laundered had to come from drug trafficking. We know that the money she laundered did come from drug trafficking because the indictment to which she pleaded guilty specifically alleged that the funds were drug proceeds. The factual basis at rearrangement specifically alleged the money was drug proceeds. In Cifuentes, this court said that the government needs to show a likelihood the underlying conduct, drug trafficking, occurred by a preponderance of the evidence to include relevant facts at sentencing. Not only do we have a preponderance of the evidence, we've got the factual basis and the indictment showing that the money she laundered was drug proceeds. So we know a sale occurred at some point. So then the question is, okay, is she responsible for the underlying substantive conduct, right? And again, Cifuentes and United States v. MATA, which also is cited in my brief, shows that this defendant, Ms. Garcia, is responsible for the underlying conduct because, as the district court found, she was extensively involved in the drug trafficking organization. She was not just a third-party money launderer, someone who takes money, doesn't know where it came from, what it is, after the fact, and then just helps out the DTO by, oh, I'm just going to send it through Western Union or whatever. This defendant was not only a money launderer. She herself, according to the PSR, was a transporter of drugs as well. She delivered, according to the PSR, between six and seven loads of narcotics herself. She used her residence as a transfer point where the drugs would be unloaded from one load vehicle to the next, and then they would be transported further north. She was supposed to take the seized load that the co-defendant was arrested with at the border, but she had other obligations that day and couldn't do it. In a recorded jailhouse call, she instructed the co-defendant whom to blame for the seized load. She instructed the co-defendant how to launder money himself. She received money from the co-defendant, which she then sent to her drug trafficking boyfriend in Mexico, who was a leader or at least a leader of this particular cell. Do you think it matters that he had so many sentencing hearings? Was that meaningful in terms of how much was getting done? I mean, in other words, it's hard for us to say, oh, he didn't pay attention. I mean, it was so much work done, right? There was a lot of work done, and I think the parties were struggling with trying to find cases that were directly on point, and I will admit I didn't find any cases directly on point under all the circumstances of this case. So after the first hearing, I think Mr. Sully asked for a continuance because he wanted to go through the discovery. Then we came back to the second sentencing hearing, and the court wanted further briefing, and then we had the third sentencing hearing, and the court hadn't had a chance to digest all the briefings, so then we had the fourth sentencing hearing, which was a lengthy hearing. At the third sentencing hearing, that's when the district court decided she's extensively involved in this, but I'm just going to take the $10,300 that we know she laundered, and I'm going to extrapolate that into some drug quantity. And then that's when the prosecutor said, well, I can call an agent to give that information. And then that's when we had the, you're right, Judge, the fourth sentencing hearing, they put on the testimony about the different values of the drugs. And I think what the court was trying to do, so because of her involvement in the drug trafficking, right, that's when you say, okay, she's responsible at least by a preponderance of the evidence. We can apply the cross-reference. Once you make that determination, you're not limited to a specific load or quantity of drugs that she delivered or was involved in producing the money. This court in Sharon said you're not limited to only using drugs directly related to the money laundering offense rather than the defendant's drug-dealing relevant conduct. And once you get to that point, that's where the seized load comes in, because the seized load provides additional information about this drug trafficking organization, the types of drugs it was moving. To me, the $10,300 seems actually pretty low, but she said something like $3,900-ish. So what am I missing on thinking $10,300 looks pretty low in this arena? I agree with you, Judge. It does look pretty low. I don't know why only $10,000. I think that's perhaps what we could substantiate through receipts from Western Union or whatever money service business. I'm speculating in giving that answer. I do not know why it was $10,000. But those were the transactions that she was specifically tied to. But that's quite a bit lower than a lot of cases. It's true. That's true. But it doesn't negate the fact of her involvement in the substantive drug trafficking if she's delivering six and seven loads herself. At re-arraignment, the number that she... No, but she was even trying to take it down further. She was, because at re-arraignment, the number was 39 and change, 3,900 and change. That's what she admitted to. But, I mean, as this Court knows, when you're dealing with drug cases, right, the amount to which a defendant admits is often much lower than what is ultimately determined through relevant conduct once you go through the PSR. The 3,900 that she admitted was also added to at least $6,600 that she instructed her niece to send as well. So we get, and then 6,600, of course, plus 39 and change, that gets you more than 10,300, right? One possible explanation for that is the fact that the defendant claimed not all of the money she sent came from drug proceeds. Some of it was legitimate funds she was sending to family members. But there's no evidence. There was no evidence introduced by the defendant to show how much was legitimate funds. And the PSR, the probation officer, after going through the discovery, the investigative reports, and interviewing the case agent, determined $10,300 was the amount that she could directly be tied to. I agree that seems like a low number, but I think the PSR actually was correct, and she should have been held responsible for all of the drugs in the seized load because that was relevant conduct of the underlying offense. But the court said, I'm not going to do that. I'm only going to hold her responsible for the $10,000 worth of drugs, and it used the seized load as sort of the basis for determining, okay, what types of drugs are we going to hold her responsible for. And that makes sense because that's what the drug trafficking organization was involved in trafficking, right? The meth, fentanyl, and heroin should have been cocaine. That was a mistake. I own that, that we said there was no cocaine when there should have been. But ultimately, the cocaine would not have lowered the offense level. Based on the court's process, right, it took an average of what the offense levels would have been, and it came up with the number 28. As I explained in my brief, actually the number is 29. Had they done the math right at sentencing, it would have been 29. But if you added in the cocaine, the average of 4 rather than the average of 3 would have been 28, and that's what the district court used. So the fact that it overlooked the cocaine didn't ultimately have an effect based on what the court did. Okay. You understand what I'm saying there? Okay. And I think Judge Smith is right to ask about the standard of review and what did the defendant specifically object to. She didn't object to the absence of cocaine. She didn't object to any analysis based on converted drug weight. I think the district court was trying to reach a fair and just result, wanted to recognize that she was extensively involved in a drug trafficking organization that dealt in multiple different types of drugs, wanted to hold her responsible for some proportion of those drugs, and it came out with a range that the court even noted was one-third of what the PSR had determined. And the PSR did a converted drug weight analysis, and it came out with a range that was capped because of the statutory maximum at 210 to 240 months. Instead, the court went with a range of 57 to 71 months and sentenced her to the low end of that, 57 months. And so ultimately, any mistakes or errors that conceivably were made either had no effect or inured to her benefit. Yeah, I think that... So under the prongs, then, of plain error review, first prong is there was error. Second prong is it was plain. I think you're acknowledging that it was plain. And the third would be whether it affected substantial rights. And then the fourth one is kind of the loosey-goosey catch-all test. Correct. It would be plain to the extent that the court should have taken into account cocaine. I can't say otherwise because there was cocaine in the seized load, and so she should have been held responsible for some amount of cocaine. But also think about this. When you do a converted drug weight analysis, and it's just a truism, the more drugs you have, the higher your offense level generally is. So you're saying it fails on the third prong? Lack of substantial rights. Wait until the fourth prong. I say it fails on the third prong, but I also think that the court wouldn't necessarily want to exercise its discretion for essentially the same reasons. She got a huge break. And because this one situation seems like one where they should have said something, if that mattered to them. She could have even said it. A lot of times it's high-up law so the defendant doesn't have a clue. But this is not. I mean, she knows whether there was cocaine and didn't say anything. The lawyer didn't say anything. So to me, this is a little different arena than the usual plain error. It's a weird error. I agree. On their part. I agree. I do want to just briefly note that with respect to the $10,000, she did object to the $10,000, no question about that. That's a preserved issue. Right, but not because it wasn't cocaine.  She's really trying to cubby what she had. But as you said, had the district court gone with the PSR, wow. Right. Her life would have been in prison. Exactly. And that's largely a result of the fact that there was methamphetamine involved here, which has an outsized effect when you convert that to the converted drug weight. But I do want to note, because I don't want counsel to come up and contradict me that he didn't try to show that the $10,000 was wrong. He did, and I will acknowledge to the extent that, he handed the district court a transactions list and tried to argue that there were duplicate transactions counted and therefore the amount was too high. But if you read the transcript, you'll see that the district judge said this was unhelpful, it was very difficult to read, and he couldn't find any duplicate transactions. So he didn't actually rebut the PSR's finding of $10,300. That's the government's position, and therefore adopting that number was permissible. I do not have a lot more to say unless the court has additional questions about it. I won't have to use all your time, as you know, Mr. Reed. I'm happy to give it back, Judge Smith. The government asks that this court affirm. Thank you. Thank you, Mr. Reed. Mr. Sully for the vote. Yes, thank you, Your Honor. I'd like to clarify that Ms. Garcia repeatedly objected to the findings in the PSR that she was involved in the underlying drug trafficking and she objected to the cross-reference being applied at all. So while it would have been better if she or her counsel had said, hey, cocaine was allegedly part of this case, her position was that regardless of what type of drugs were involved, she wasn't personally involved in them. So she was objecting to that indirectly. My lawyer said that, but she didn't say that. She didn't say it, but it was in her written objections. I know, I understand that, but, I mean, you said she said it. No, the lawyer said it. Right, right. Which is fine. She doesn't have to say anything, but I just think you need to be clear on that. I'm sorry if I wasn't clear. Through her lawyer, she was objecting to that being considered. She did admit, and we continue to admit, that she did launder money, that that money came from drug proceeds. Whether or not she knew they were drug proceeds, she knew it was from some form of legal activity. So she did object to basically the whole process of applying the cross-reference to begin with. I would like to conclude by saying basically the appellee is asking the court to broaden the parameters that are allowed in order for the cross-reference. The appellee is asking the court to allow CSLOs that don't generate funds to be considered, even though, as this court has said in C. Fuentes, and the guidelines says it has to be, the underlying offense has to be something that generates the laundered funds. The appellee is also asking the court to consider relevant conduct to be more general, as opposed to the defendant committing the underlying offense being the drug sales that generate the proceeds. Ultimately, what happened here was that the district court was not able to reliably determine the offense level for the underlying offense, meaning the drug sales that generated the proceeds. I think the district court actually expressed some concern itself. After the back-and-forth and basically doing a different type of calculation than what was done in the PSR, the district court asked the prosecutor whether the calculations were correct and expressed concern that it wasn't clear from the record how they had arrived at those figures and whether that would survive scrutiny on appeals. So even the district court, even though it tried its best, seemed to realize that it couldn't reliably calculate the offense level, not for the CSLO because that's not the underlying offense, but for whatever drug sales generated the funds that Ms. Garcia laundered. The appellee is still unable to identify any of those sales, much less connect Ms. Garcia and her money laundering to them, and that's why the offense level couldn't be determined for them. And even if we're to accept what the appellee says and say, well, despite her objections, she was involved in the drug conspiracy and she did transport drugs, and even if we assume all of that's true, it doesn't change the fact that the offense level for the drug sales that generated the proceeds can't be determined, and therefore the cross-reference shouldn't have been applied to begin with. Let me ask you this. What specifically is the relief you're seeking? Are you seeking a do-over on the A-1, A-2, a determination, you know, that there's error across the board? I mean, you heard counsel's argument on the plain error piece to say even if there was error, you know, it doesn't affect her substantial rights or the latter. So, I mean, what's your bottom line? I mean, we hear your argument, and so assuming arguendo is not perfect, I mean, what is the relief you're seeking? A remand on this one point, a reversal across the board, a pronouncement of law on the guidelines? Just tell me. I read your brief and I hear your argument, but I always like to know what people are asking for. Of course, Your Honor. We're asking the court to vacate and remand with instructions that the cross-reference shouldn't apply, which would mean that the sentencing should instead be conducted under A-2. The plain error issue, that presupposes that the cross-reference should have been applied, and it has to do with whether cocaine should have been considered or not. But our argument is that the cross-reference shouldn't have been applied at all and that the district court should instead sentence Ms. Garcia under A-2, which, of course, would result in a much lower guideline range and, therefore, impact her substantial rights. All right. All right. Thank you, Mr. Sully. Thank you, Your Honor. Your submission, we noticed that your court appointed,